IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE MONITORING OF A TRACKING DEVICE IN OR ON A BLACK 2009 MERCEDES C-CLASS CURRENTLY BEARING MASSACHUSETTS REGISTRATION 3MHK52 AND VIN WDDGF81X59F212383 | Case No. 24-mj-236-01-AJ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Lieutenant Colin L. Wheeler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I have been employed in law enforcement for approximately 16 years. My current assignment is with the Strafford County Sheriff's Office as a supervisor within the Investigations unit. I am currently a Task Force Officer ("TFO") for Homeland Security Investigations ("HSI") in the Manchester, New Hampshire Office. During this assignment I have participated in multiple intrastate and interstate narcotics investigations. Prior to this assignment, I was a sworn Special Deputy US Marshal and TFO assigned to the United States Marshals District of New Hampshire Joint Fugitive Task Force, where my job was to locate, and arrest wanted fugitives. Prior to working at the Strafford County Sheriff's Office, I was employed by the Kingston, NH Police Department, and the Farmington, NH Police Department. I held the positions of Officer, Detective, and Corporal during my tenure at these two departments. I successfully graduated from the 150th New Hampshire Police Standards and Training Full-Time Police Academy in 2009.

2. From my training and experience, I have personally observed the sale and possession of various controlled substances including, but not limited to, marijuana, cocaine, cocaine base ("crack" cocaine), heroin, fentanyl, and methamphetamine. I am familiar with the

types of packaging used to distribute controlled substances, as well as equipment used such as scales, bags, and cutting agents. I am familiar with equipment used to ingest and use controlled substances, such as needles, syringes, and smoking pipes. I have also learned the preferred methods of ingestion of various controlled substances such as smoking, injecting, snorting/ inhaling, along with dose sizes. I know that drug traffickers use counter-surveillance techniques to avoid detection. These techniques include operating or using several vehicles or vehicles registered in other people's names and the use of stash houses or alternate locations to store and hide drugs and assets. Also, I have learned the methods of distribution of controlled substances such as marijuana, cocaine, crack cocaine, heroin, fentanyl, and methamphetamine. I have further learned through my training and experience that those subjects involved in the illegal distribution of narcotics have ties to other illegal crimes that involve money laundering, fraud and other deceptive behaviors. I have talked to drug dealers and listened to their conversations, so I am familiar with the coded language often used in these conversations. I also stay current on the latest technology used to investigate drug crimes.

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I also am a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rules of Criminal Procedure.

## PURPOSE OF AFFIDAVIT

4. I make this affidavit in support of an application permitting the renewed monitoring of a tracking device in or on the following vehicle:

    a. A black 2009 MERCEDES C-CLASS, currently bearing Massachusetts registration 3MHK52 and vehicle identification number VIN

WDDGF81X59F212383, and registered to Eddy BALBUENA GOMEZ (the "Subject Vehicle").

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Eddy BALBUENA GOMEZ is a "runner" and a member of the Michael MARTINEZ Drug Trafficking Organization ("DTO") using the Subject Vehicle in furtherance of violating Title 21, United States Code, Sections 841(a)(1) (distribution of controlled substances) and 846 (conspiracy to distribute controlled substances). There is also probable cause to believe that the use of a tracking device in or on the Subject Vehicle will lead to the evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

6. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. The information contained in this affidavit is submitted for the sole purpose of supplying probable cause for the issuance of a warrant authorizing the government to monitor a mobile tracking device which transmits an electronic signal that can be used to detect the movement and location of the above described Subject Vehicle. I have not set forth every detail I or other law enforcement officers know about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause of the issuance of the requested extension of authorization for tracking warrant.

## PROBABLE CAUSE

7. On June 14, 2024, the Honorable Magistrate Judge Page Kelley granted a Tracking Warrant in the United States District Court for the District of Massachusetts for the aforementioned Subject Vehicle, Case No. 24-MJ-6352-MPK. On August 1, 2024, based on the vehicle's presence in the State of New Hampshire, the Honorable Magistrate Judge Andrea Johnstone granted a Tracking Warrant in this Court for the continued tracking of the vehicle, Case No. 24-mj-186-01-AJ. Since that time, investigators have continued to observe that the Subject Vehicle is being used to conduct drug trafficking activity.

8. On August 1, 2024, an HSI Undercover Agent ("UCA") contacted MARTINEZ and arranged the purchase of 20 "sticks" for $2,000. Based on my training and experience and the prior context of this investigation, I know that "sticks" is a reference to 10 grams of an opioid product containing fentanyl. MARTINEZ and the UCA discussed the meeting location and time. They agreed to meet at an address in Londonderry, NH at approximately 1:30 pm.

9. Prior to the meeting, law enforcement established surveillance in the area of 945 Riverside Drive, Methuen, Massachusetts. At approximately 1:00 pm., the Subject Vehicle was observed arriving at this location. GOMEZ was observed exiting the Subject Vehicle and entering the apartment of Yijanna RODRIGUEZ.

10. A short time later, GOMEZ was observed exiting the apartment and getting into the Subject Vehicle. The Subject Vehicle then was driven directly to the prearranged meeting location, arriving at approximately 1:30 p.m.

11. The Subject Vehicle parked next to the UCA's vehicle. At that time, the UCA got into the passenger seat of the Subject Vehicle. Once in the Subject Vehicle, the UCA handed GOMEZ $2,000 and then conducted a controlled purchase of what investigators believe based on training and experience, the context of the transaction, the appearance of the substance, and the weight of the substance with packaging, to be approximately 200 grams of fentanyl. The

suspected fentanyl was sent to the Customs and Border Protection lab for chemical analysis. Results are pending.

12. On September 3, 2024, the UCA contacted MARTINEZ and arranged the purchase of 20 "sticks" for $2,000 and 10 "sticks" to be "fronted" (meaning provided without upfront payment) for a total of 30 "sticks." MARTINEZ and the UCA discussed the meeting location and time. They agreed to meet at an address in Londonderry, NH at approximately 5:30 pm.

13. Via the use of the GPS Tracking Device on the Subject Vehicle, the vehicle was observed arriving at 945 Riverside Drive, Methuen, Massachusetts at approximately 3:50 pm. At approximately 5:15 pm., the Subject Vehicle departed 945 Riverside Drive and traveled directly to the prearranged meet location in Londonderry, New Hampshire.

14. Once at the meet location, the Subject Vehicle parked next to the UCA's vehicle. The UCA then got into the passenger seat of the Subject Vehicle. Once in the Subject Vehicle, the UCA handed GOMEZ $2,000. GOMEZ was on the phone speaking Spanish with another male. The UCA recognized the voice to be that of MARTINEZ. After some discussion with MARTINEZ, GOMEZ stated that the UCA owed $1,000 for the amount "fronted." GOMEZ then ended the phone conversation and counted the money and then handed the UCA a plastic bag. T he UCA exited the Subject Vehicle and got back into the UCA's vehicle.

15. Once the UCA was back into the vehicle, the UCA looked into the black plastic bag and observed what investigators believed based on training and experience, the context of the transaction, the appearance of the substance, and the weight of the substance with the packaging, to be 300 grams of fentanyl. Law enforcement sent the suspected fentanyl to the Customs and Border Protection lab for chemical analysis. The results are pending.

16. After the meeting with the UCA, the Subject Vehicle traveled towards the seacoast area of New Hampshire. Via the use of the GPS Tracking Device on the Subject

Vehicle, it was observed that the Subject Vehicle made several short stops in the Rochester and Somersworth, New Hampshire area to known narcotic redistributors for the MARTINEZ DTO before returning back to Massachusetts at approximately 11:00 pm.

17. On September 6, 2024, at approximately 8:50 pm., via the use of the GPS Tracking Device on the Subject Vehicle, it was observed at 945 Riverside Drive, Methuen, Massachusetts.

18. A short time later, the Subject Vehicle departed that location and traveled towards the seacoast of New Hampshire. Once in New Hampshire, the Subject Vehicle made several short stops in Dover, Somersworth, and Rochester, New Hampshire.

19. On September 7, 2024, at approximately 12:30 am., the Subject Vehicle stopped at 20 Empire Court, Rochester, New Hampshire. This is a known location where the Subject Vehicle has made several stops in the past. This residence belongs to Tabitha OBRIEN, a known redistributor for the MARTINEZ DTO. A short time later, the Subject Vehicle returned to Massachusetts.

20. On September 9, 2024, members of the Strafford County Sherriff's Office applied for and were granted a state search warrant for 20 Empire Court, Rochester, New Hampshire. As a result of the warrant, law enforcement seized approximately 72 grams of suspected fentanyl. The suspected fentanyl was packaged in a clear Ziplock sandwich style bag with "100" written on it. This packaging is consistent with how the MARTINEZ DTO packages its narcotics for delivery. Lab results are pending on the suspected fentanyl.

## USE OF TRACKING DEVICE TO FURTHER THE INVESTIGATION

21. Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute drugs often utilize motor vehicles in order to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances utilize motor vehicles in

order to transport controlled substances to various locations to leave them there to store those substances as inventory for their distribution activities. I am also aware that individuals who are engaged in the distribution of controlled substances utilize motor vehicle in order to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds to and/or from their illicit transactions, as well as to and/or from locations where these proceeds may be counted and stored. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement officers to effectively conduct surveillance in order to determine where the individual who is distributing the controlled substance is driving their vehicle to conduct their drug-related activities, including to pick up controlled substances, or distribute them, or store them. The presence of a tracking device on a motor vehicle which is being utilized for the distribution of controlled substances or the transportation of drug proceeds is beneficial because it allows law enforcement officers to track the movement of the vehicle effectively and to decrease the chance of detection.

22.  The monitoring of a tracking device on the Subject Vehicle enhances investigators' ability to follow the movements of Eddy BALBUENA GOMEZ, a runner for the MARTINEZ DTO, as well as other unidentified co-conspirators, while decreasing the chance of detection. This affiant and other involved investigators plan to utilize this information to assist with the possible interdiction of future drug deliveries as well as to assist in identifying sources of supply, customers, stash locations, and locating other evidence that will assist us in learning the full nature and scope of the aforementioned individuals' criminal operation.

## AUTHORIZATION REQUEST

23.  Based upon the facts set forth above, I respectfully request that the Court issue the

proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3177, that authorizes members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to monitor a mobile tracking device in or on the Target Vehicle. Pursuant to Federal Rule of Criminal Procedure 41(b)(4), a warrant may issue authorizing the use of the device to track the movement of property located within the district and outside the district. Based on previous investigative efforts in this case, I know that the Target Vehicle travels regularly between Massachusetts and New Hampshire and is in New Hampshire during daytime hours approximately five days per week.

24. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 90 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. I would expect the investigation will remain in covert status for at least 90 days after tracking has concluded. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

/s/ Colin L. Wheeler
Colin L. Wheeler
Lieutenant
Strafford County Sheriff's Office

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. P. 41 and affirmed under oath the contents of this affidavit and application.

_____
Hon. Andrea K. Johnstone
United States Magistrate Judge
**Sep 13, 2024**